## UNITED EMPLOYERS CASUALTY CO. v. McCLOUD.

### No. 11165.

Court of Civil Appeals of Texas. Galveston.

Dec. 12, 1940.

Will R. Saunders, of Dallas (W. E. Johnson, of Dallas, of counsel), for appellant.

Peden, Johnson & Peden, of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal in a compensation suit brought by appellant, United Employers Casualty Company, against appellee, George McCloud, to set aside an award of the Industrial Accident Board, wherein he was awarded compensation for total and permanent incapacity, alleged to have been the result of an injury sustained by him in the course of his employment with the P. & E. Construction Company, who carried compensation insurance with appellant.

Appellee filed answer and cross-action in which he alleged that while engaged in installing fire plugs for the City of Houston in the course of his employment with the P. & E. Construction Company, his foot slipped, causing him to fall and that a large part of the weight of one of said fire plugs was thrown on him, causing him to suffer accidental personal injuries and that as a

result thereof he had become totally and permanently disabled.

Appellant answered by general demurrer, exceptions, and general denial.

In answer to special issues submitted, the jury found, in effect, that on October 4, 1939, appellee sustained an accidental injury in the course of his employment with the P. & E. Construction Company which resulted in his total and not partial incapacity to work or labor, and that such total incapacity was permanent and not temporary; that he had not recovered from said injury, and would not recover therefrom; that he was not and would not be able to perform the usual tasks of a workman, and that his disability would continue the same throughout his lifetime. $22.08 was found to be his average weekly wage.

Based on the answers to said special issues, judgment was rendered in favor of appellee and against appellant for the sum of $13.25 per week for a period of 401 weeks, commuted to its cash value and apportioned two-thirds to appellee and one-third to his attorneys.

The controlling issue made by the pleadings in this appeal is whether appellee received the injuries alleged, and if so the extent thereof, or whether, as contended by appellant, the alleged injuries were simulated.

Appellant's first contention is that the court erred in overruling its application for a continuance because of the absence from the state of H. L. Perkins, a member of the partnership in whose favor said policy of insurance was issued. In its application, which is not shown to have been controverted, appellant alleged that it was a first application for continuance; that the witness Perkins was a material witness and that he was temporarily absent from the state and beyond the jurisdiction of the court; that his testimony was material in that he would testify that on various occasions since the alleged injuries of appellee he had seen him walk normally and without limping and in such manner as to indicate that he had no disability. It alleged that it had used due diligence to secure the attendance of said witness, in that he had promised appellant to be present on the date the case was set for trial and that appellant had relied upon said promise and had expected him to be present on that date; that on May 10, 1940, four days before the case went to trial, it was found

that said witness was temporarily absent in another state and out of the jurisdiction of the court and could not be located or served with a subpoena; that from May 10 to May 14, 1940, appellant had been endeavoring to locate and communicate with said witness by telephone but had been unable to do so. Said application was sworn to by Charles Crenshaw, who stated on oath that he was an agent and attorney for appellant; that he had authority to make said affidavit and that the matters and things set forth in said application were true and correct as therein stated.

Appellee, when interrogated with reference to his ability to walk without crutches, testified as follows:

"Q. I asked you if you had walked since you were injured without your crutch; you said you had walked once in your home? A. Yes, sir.

"Q. Have you walked anywhere else? A. I was trying to think last night. I want to be positive about my trying to walk, but I think I have tried to walk two or three times without the crutches.

"Q. When was that, soon after you were hurt? A. Yes, sir, that was soon after I got hurt.

"Q. Did you walk far at the time? A. No, sir, I never have walked any further than I imagine from here to that door.

"Q. How did that affect you, if it did affect you? A. Well, I got hurt in this leg and sometimes it just feels like I ain't got no leg. I put it down on the ground with my weight and it just goes right down like I didn't have any leg. I don't have any power in this leg at the time."

Dr. C. J. I. Ekman, a witness for appellee, stated that, in his opinion, appellee was totally and permanently disabled. When asked as to appellee's ability to walk without crutches, he testified as follows:

"Q. Have you had him try to walk in the office without the aid of crutches? A. I have.

"Q. Can he walk and get up without the aid of crutches? A. No."

Dr. L. G. Pawelek, a witness for appellant, testified that on October 5, 1939, he examined appellee and found no objective evidence of any injury, and that, after keeping appellee under observation and testing him, it was his conclusion that appellee had no disability.

Dr. J. M. Filippone, a witness for appellant, who had appellee under observation

and treatment for approximately six weeks after his alleged injury, testified that he could find nothing objectively wrong with him except a slight rigidity of the muscles of the lower back which soon passed away. He testified that in his opinion appellee was malingering.

Article 2168, Revised Statutes of 1925, provides that: "If the ground of such application be the want of testimony, the party applying therefor shall make affidavit that such testimony is material, showing the materiality thereof, and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; that such testimony cannot be procured from any other source; and, if it be for the absence of a witness, he shall state the name and residence of the witness, and what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done; provided that, on a first application for a continuance, it shall not be necessary to show that the absent testimony cannot be procured from any other source."

This being a first application for continuance, the questions presented under this assignment are, whether appellant's application was in compliance with said Article 2168, whether the testimony sought was material, and whether appellant had used due diligence to procure such testimony.

The application in question was in substantial compliance with the statute. It was properly verified and was not controverted by appellee, consequently the facts alleged therein must be accepted as true. The absent witness resided in the City of Houston, where the case was set for trial. He was a member of the partnership in whose favor said policy of insurance was issued and had promised appellant to be present during the trial of the case and had stated he would testify that on various occasions since the alleged injuries of appellee he had seen him walk normally and without limping and in such a manner as to indicate that he had no disability. This testimony was material, in that it strongly corroborates the testimony of appellant's two medical witnesses who testified on the trial that appellee's alleged injuries were simulated, and it is in direct conflict with the testimony of appellee and Dr. Ekman, both of whom testified that appellee was unable to walk without the aid of crutches. There can, we think, be no

doubt but that the jury was entitled to have the benefit of this testimony and that the failure to procure it was prejudicial to appellant's case.

The fact that the absent witness resided in Houston; that he had been notified of the setting of this case and had promised appellant to attend the trial thereof and to testify were, we think, sufficient facts to excuse appellant from taking the prescribed statutory steps to enforce the attendance of the witness or from taking his deposition. Hargrave v. Texas & P. Ry. Co., Tex.Com.App., 12 S.W.2d 1009; Haley Fisheries, Inc., v. Payne, Tex.Civ. App., 48 S.W.2d 437.

This is particularly true since our courts have uniformly held that, in determining the materiality of the testimony sought from an absent witness and in ascertaining whether the trial court abused its discretion in overruling a first application for continuance which has not been controverted, an appellate court must not only look to and consider the facts alleged in such application, but it must take into consideration the testimony taken on the trial of the case. Ward v. Brown, Tex.Civ. App., 122 S.W.2d 684; Haley Fisheries, Inc., v. Payne, Tex.Civ.App., 48 S.W.2d 437; 9 Tex.Jur., § 83, p. 760.

While ordinarily the granting or refusing of a motion for continuance rests within the sound discretion of the trial court, the exercise of this sound discretion is always subject to review, particularly when the statute with reference to applications for continuance has been, in every way, complied with, in which case there is no presumption that the court did not abuse its discretion. Gulf, C. & S. F. Ry. Co. v. Brooks, 63 Tex.Civ.App. 231, 132 S.W. 95, writ refused.

Taking into consideration the facts alleged in said application for continuance and the facts adduced in the trial of the case, both of which were material, we think that appellant was justified in relying on the promises of said witness to be present and was excused thereby from taking the prescribed statutory steps to enforce his attendance.

We have not considered the other assignments brought forward. They will, probably, not arise in another trial.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.